**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————— )
                                )
In re:                         )
                                )   17 Civ. 7755 (LGS)
Sergey Petrovich Poymanov,      )
                                )   Appeal From
            Debtor.        )   Bankruptcy Case No. 17-10518
                                )
                                )
———————————————————— )

**BRIEF OF APPELLANT, PPF MANAGEMENT, LLC, FROM**
**DECISION AND ORDERS OF THE UNITED STATES BANKRUPTCY**
**COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, New York 10166
(212) 801-9200
Alan J. Brody
Caroline J. Heller

2101 L. Street, N.W.
Suite 1000
Washington, D.C. 20037
(202) 331-3100
Sanford M. Saunders, Jr.
Nicoleta Timofti

*Counsel for Appellant, PPF Management LLC*

# TABLE OF CONTENTS

I.      STATEMENT OF APPELATE JURISDICTION..................................................... 1

II.     QUESTIONS PRESENTED................................................................................. 2

III.    STATEMENT OF THE CASE............................................................................. 3

IV.     STATEMENT OF FACTS .................................................................................. 6

V.      SUMMARY OF THE ARGUMENT ................................................................ 11

VI.     STANDARD OF REVIEW .............................................................................. 13

VII.    ARGUMENT.................................................................................................... 14

A.      Bankruptcy Court Erred and Abused its Discretion Denying PPF
        Discovery ...............................................................................................14

        1.      PPF Notice of Deposition and Request for Production ................ 15
        2.      Bankruptcy Court Determination to Deny PPF Discovery is
                Clearly Erroneous and Contradicted by the Court's Own
                Subsequent Findings ................................................................. 16

B.      Bankruptcy Court Committed a Clear Error and Abused its Discretion
        by Declining to Re-open the Record for Evidence of Conspiracy and
        Retaliation in Russia ...............................................................................20

C.      Bankruptcy Court Erred in Ruling that Property of the Debtor, as
        Opposed to Property of the Debtor's Bankruptcy Estate Under 11
        U.S.C. § 542, is Subject to the Automatic Stay of 11 U.S.C. § 362(a)......24

D.      Bankruptcy Court Erred in Finding that the Funds Deposited in the
        Law Firm Trust Account in the United States Constituted an Asset of
        the Debtor................................................................................................28

        a.      The Bankruptcy Court Erred in Finding that the Funds
                Deposited in the Trust Account were Ever Property of
                the Debtor........................................................................31
        b.      PPF demonstrated that the Funds were the Result of a
                Transaction that Contravened Russian Law. .....................32

E.      Bankruptcy Court Failed to Exercise its Discretion under 11 U.S.C. §
        1506 to Deny the Foreign Administrator's Petition for Recognition ........33

        a.      The Record Shows That Recognition of this Chapter 15
                Petition Contravenes United States Public Policy .............34
        b.      Violations of Russian and United States Law....................35
        c.      Fundamental U.S. Policy Sanctioning Russian Human
                Rights Abuses and Corruption .........................................37

VIII.   CONCLUSION................................................................................................ 38

i

# TABLE OF AUTHORITIES

**Federal Cases**

*Almonte v Hines*,
15 Civ. 6843 (PAE)(HBP), 2016 WL 6834015 (S.D.N.Y. Nov. 18, 2016) ..........................................................................................14

*Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*,
No. 10 civ. 3314 (RWS), 2016 WL 1659316 (S.D.N.Y. Apr. 15, 2016) ...................15

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
389 B.R. 325 (Bankr. S.D.N.Y. 2008) ...........................................................29

*In re Berau Capital Resources Pte Ltd*,
540 B.R. 80 (Bankr. S.D.N.Y. 2015) .............................................................30

*In re Brittain*,
435 B.R. 318 (Bankr. D.S.C. 2010) ...............................................................26

*In re Caldor Corp.*,
303 F.3d 161 (2d Cir.2002)..........................................................................13

*Connecticut National Bank v. Germain*,
503 U.S. 249, 112 S. Ct. 1146, 117 L. Ed. 391 (1992)...................................27

*In re Cruz*,
516 B.R. 594 (B.A.P. 9th Cir. 2014).............................................................26

*Drawbridge Special Opportunities Inv. Fund LP v. Barnet (In re Barnet)*,
737 F.3d 238 (2d Cir. 2013).....................................................................29, 31

*In Matter of Dunson*,
2014 WL 7793689, Case No. 13010604 - 607, slip op. (Bankr. N.D. Ga. 2014)..................................................................................................21

*In re Enron Corp.*,
419 F.3d 115 (2d Cir.2005).........................................................................13

*In re Ephedra Prods. Liability Litig.*,
349 B.R. 333 (S.D.N.Y.2006)......................................................................35

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
756 F.2d 230 (2d Cir. 1985).........................................................................14

*In re Gold & Honey, Ltd.*,
410 B.R. 357 (Bankr. E.D.N.Y. 2009).......................................29, 34, 35, 36

*In re Hale*,
535 B.R. 520 (Bankr. E.D.N.Y. 2015).....................................................25, 26

*In re Jones*,
    339 B.R. 360 (Bankr. E.D.N.Y. 2006)..................................................25

*In re Klinger*,
    No. 01-32463 (LMW), 2007 WL 2262519 (Bankr. D. Conn. Aug. 6,
    2007) ...........................................................................................25

*Leibovitz v. City of N.Y.*,
    15 Civ. 546 (LGS)(HBP), 2017 WL 462515 (S.D.N.Y. Feb. 3, 2017) ......15

*Miller v. No. Am Coal Corp.*,
    870 F.2d 948 (3rd Cir. 1989) .....................................................20

*In re Moore*,
    410 B.R. 439 (Bankr. E.D. Va. 2009)............................................26

*Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank*, N.A., 15 Civ.
    0293 (LTS) (JCF), 2016 WL 3906712 (S.D.N.Y. July 14, 2016) ...............14

*In re New City Off-Track Betting Corp.*,
    427 B.R. 256 (Bankr. S.D.N.Y. 2010)......................................29, 30

*In re Octaviar Administration Pty*,
    511 B.R. 361 (Bankr. S.D.N.Y. 2014)............................................30

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978)..................................................................14

*In re Polaroid Corp.*,
    527 B.R. 335 (D.Mn. 2015) .....................................................20

*PPF v. Sberbank, et al*,
    16 CV 9139 (Nov. 22, 2016, S.D.N.Y.) .............................................3

*In re Qimonda AG Bankr. Litig.*,
    433 B.R. 547 (E.D.Va.2010)......................................................35

*Robinson v. Shell Oil Co.*,
    519 U.S. 337, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997)...........................27

*Romeo v. Sherry*,
    308 F.Supp.2d 128 (E.D.N.Y. 2004) ..............................................21

*S.E.C. v. Rajaratnam*,
    622 F.3d 159 (2d Cir. 2010)......................................................14

*Salahuddin v. Coughlin*,
    993 F.2d 306 (2nd Cir. 1993).....................................................20

*Schaffer v. CC Investments, LDC.*,
    286 F. Supp.2d 279 (S.D.N.Y. 2003)............................................26

*Schlesinger Investment Partnership v. Fluor Corp.*,
    671 F.2d 739 (2d Cir. 1982)......................................................14

*Sokol v. Wyeth*, Inc.,
    No. 07 Civ. 8442(SHS)(KNF), 2008 WL 3166662 (S.D.N.Y. Aug. 4,
    2008) ........................................................................................................................15

*In re Suntech Power Holdings Co., Ltd.*,
    520 B.R. 399 (Bankr. S.D.N.Y. 2014) ................................................................31, 32

*In re Toft*,
    453 B.R. 186 (Bankr.S.D.N.Y.2011) ..........................................................................35

*U.S. v. Prevezon Holdings Ltd. et al*,
    13-cv-06326 (TPG) (S.D.N.Y.) ..................................................................................38

*United States v. U.S. Gypsum Co.*,
    333 U.S. 364, 68 S. Ct. 525, 92 L. Ed. 746 (1948) ....................................................14

*In re Vitro*,
    701 F.3d 1031 (5th Cir. 2012) .............................................................................34, 35

*In re Worldcom, Inc.*,
    357 B.R. 223 (S.D.N.Y.2006) ....................................................................................13

*In re Xtra Petroleum Transport, Inc.*,
    473 B.R. 430 (Bankr. D.N.M. 2012) ..........................................................................26

**State Cases**

*In re Gant*,
    Bankruptcy No. 10-01363-BGC-13, Adversary No. 10-00157-BGC,
    2011 WL 7069458 (Bankr. N.D. Ala. June 16, 2011) ................................................26

*In re Wilborn*,
    No. 14-00995, 214 WL 4678423 (Bankr. D. Haw. Sept. 18, 2014) ...........................26

**Federal Statutes**

11 U.S.C. § 109.........................................................................2, 4, 11, 12, 21, 22

11 U.S.C. § 109(a). ...............................................................................................28, 29

11 U.S.C. § 301...........................................................................................................25

11 U.S.C. § 302...........................................................................................................25

11 U.S.C. § 303...........................................................................................................25

11 U.S.C. § 326(a)(1)..................................................................................................25

11 U.S.C. § 362.........................................................................................12, 24, 26, 27

11 U.S.C. § 362(a). .......................................................................................................2

11 U.S.C. § 362(a)(1)..............................................................................24, 25, 26, 28

11 U.S.C. § 362(a)(3)..............................................................................24, 25, 26, 28

11 U.S.C. § 362(c) ......................................................................................................26

11 U.S.C. § 362(c)(1)..................................................................25, 26

11 U.S.C. § 544.....................................................................................2

11 U.S.C. § 1506........................................2, 3, 12, 13, 22, 33, 34, 36

11 U.S.C. § 1507............................................................2, 16, 17, 19

11 U.S.C. § 1515.....................................................................................7

11 U.S.C. § 1517.....................................................................................7

11 U.S.C. § 1520...............................................................................7, 27

11 U.S.C. § 1520(a)...........................................................................27

11 U.S.C. § 1521...............................................................................12

28 U.S.C. § 158.......................................................................................1

28 U.S.C. § 586............................................................................33, 36

## Rules

Fed. R. Bankr. P. 7030................................................................................7

Fed. R. Bankr. P. 7034................................................................................7

Fed. R. Bankr. P. 8013..............................................................................13

Fed. R. Bankr. P. 9014................................................................................7

Fed. R. Bankr. P. 9023..............................................................................21

Fed. R. Civ. P. 59......................................................................................20

Fed. R. Civ. P. 59(a)(2)...........................................................................21

## Other Authorities

*A letter from the President to Certain Congressional Committee Chairs*,
https://www.whitehouse.gov/the-press-office/2017/04/20/letter-
president-certain-congressional-committee-chairs ......................37

Caplin & Drysdale, Chartered, *Chapter 15 at 11: Threshold Requirements
for Recognition*, March 24, 2017, *available at*
http://www.lexology.com/library/detail.aspx?g=a257ab5d-a8bf-454b-
a13f-ce5299f84e05 ......................29

Mayer Brown, *Second Circuit Holds that Chapter 15 Debtors Must Satisfy
Eligibility Requirements of Section 109(a) of the Bankruptcy Code in
Order to be Eligible for Relief*, *available at*
https://www.mayerbrown.com/files/Publication/f089121e-a335-4b24-
b206-faa886f1c0a7/Presentation/PublicationAttachment/1a88ee0e-
c247-49b1-9803-ffb781c5995c/131216-UPDATE-RBI.pdf (December
18, 2013) ......................29

12 MOORE'S FEDERAL PRACTICE section 59.13(3)(c) (Matthew
    Bender 3d ed. 2002)................................................................................................21

# BRIEF OF APPELLANT PPF MANAGEMENT, LLC

## I.     STATEMENT OF APPELATE JURISDICTION

This appeal seeks relief from the Bankruptcy Court's (i) Decision and Order Partially Granting Petition for Recognition of Foreign Main Proceeding entered on July 31, 2017 (the "Recognition Order") [Doc. 70][1], (ii) decision with respect to the Corrected Motion to Quash Notice of Deposition filed with the Court on April 10, 2017 [Doc. 24], (iii) decision with respect to PPF Management LLC's Motion Brought by Order to Show Cause to Compel Attendance of Deposition and Production of Documents filed with the Court on April 14, 2017 [Doc. 28], (iv) decision with respect to Amended Notice of Motion to Quash filed with the Court on April 17, 2017 [Doc. 33], (v) Order Partially Granting PPF Management, LLC's Motion to Update the Court and to Reopen the Record entered on July 19, 2017 [Doc. 67], (vi) all other determinations, decisions, and Orders of the Court concerning matters of discovery and evidence related to PPF's objections to the Verified Petition for Recognition of Foreign Main Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 1515, 1517 and 1520 [Doc. 2] (the "Recognition Petition") and/or any proceeding before the Court related to the Recognition Petition, and (vii) any subsequent order this Court may enter memorializing any of the above determinations, decisions or orders (collectively, the "Decision and Orders").

Appellant PPF Management, LLC (the "Appellant" or "PPF") filed a notice of appeal on August 14th, 2017. [Doc. 72]. This Court therefore has appellate jurisdiction to consider this appeal under 28 U.S.C. § 158. As set forth below, there is a question of

---

[1]  Docket references herein are to the document number for *In re Sergey Petrovich Poymanov*, United States Bankruptcy Court, Southern District of New York. Bankruptcy Case No. 17-10516 (MKV).

whether the Bankruptcy Court had jurisdiction to grant the Recognition Petition because the Appellee Aleksey Vladimirovich Bazarnov (the "Appellee" or "Receiver") did not establish the jurisdictional requirement under section 109 of Title 11 of the United States Code, as amended (the "Bankruptcy Code") that requires the foreign debtor to have an asset in the Southern District of New York. Further issues on appeal address whether the Bankruptcy Court erred in exercising jurisdiction over property which is not property of the debtor's estate, and whether the Bankruptcy Court abused its discretion in refusing to allow the Appellant to pursue necessary discovery and to introduce evidence relevant to its opposition to recognition of the foreign insolvency proceeding under Chapter 15 of the Bankruptcy Code and in denying that Chapter 15 recognition is contrary to United States public policy under sections 1506 and 1507 of the Bankruptcy Code, respectively.

## II.   QUESTIONS PRESENTED

1.      Whether the Bankruptcy Court erred, abused its discretion and unduly and irrevocably prejudiced Appellant by denying its requested discovery, directing it not to pursue testimony, and partially refusing to re-open and supplement the record with documents relating to actions in Russia which, as demonstrated by the Bankruptcy Court's subsequent decision to recognize the foreign proceeding [Doc. #70], were relevant to the Bankruptcy Court's rulings.

2.      Whether the Bankruptcy Court erred in ruling that property of Sergey Petrovich Poymanov (the "Debtor"), as opposed to property of the Debtor's bankruptcy estate under 11 U.S.C. § 544, is subject to the automatic stay of 11 U.S.C. § 362(a).

3.      Whether the Bankruptcy Court erred in finding that the funds deposited in a law firm client trust account in the United States constituted an asset of the Debtor's estate in

the absence of any proof that the funds were ever property of the Debtor, but in the face of evidence that the funds were the result of a transaction that contravened Russian law.

4.       Whether the Bankruptcy Court in contravention United States public policies by failing to exercise its discretion under 11 U.S.C. § 1506 to deny the foreign administrator's Recognition Petition when the evidence in the record demonstrated that Chapter 15 jurisdiction was based on acts in violation of Russian law and consistent with known patterns of manipulation of Russian bankruptcy proceedings in furtherance of improper Russian corporate raiding as well as United States law, specifically the Global Magnitsky Human Rights Accountability Act (Subtitle F. Public Law 114-328) ("Magnitsky Act").

## III.    STATEMENT OF THE CASE

This case involves the application of the Appellee, a receiver appointed in a Russian bankruptcy case, seeking recognition in the United States under Chapter 15 of the Bankruptcy Code of the foreign bankruptcy proceeding of an individual debtor in Russia. [Doc. 2]. The espoused purpose for seeking Chapter 15 recognition is the Receiver seeks to take control of and thwart litigation pending in the District Court for the Southern District of New York ("SDNY Litigation") brought by Appellant PPF, a Delaware limited liability company, against several non-Debtor parties based on an assignment of claims made by the Debtor and his ex-wife. *See PPF v. Sberbank, et al*, 16 CV 9139 (Nov. 22, 2016, S.D.N.Y.); Petitioner's Exhibit C. In response to the Recognition Petition, PPF filed a timely Objection with the Bankruptcy Court on April 5, 2017 based on multiple grounds, including that the Russian bankruptcy failed to qualify for recognition, that the receiver sought to improperly exercise control over non-debtor assets, and that recognition would violate United States public policy because it was filed

3

in furtherance of an illegal Russian corporate raid and the on-going conspiracy to thwart accountability for the corporate raid. [Doc. 11].

Initially, PPF's objections to recognition focused, in part, on the fact that the Russian Receiver was a co-defendant in his individual capacity in the SDNY Litigation and that recognition clearly was sought solely to thwart the SDNY Litigation and to protect the alleged co-conspirators in the corporate raid in Russia. After the Receiver filed his response and testified on direct examination, PPF expanded its grounds for objection to include the failure to identify a debtor's asset within the Southern District of New York, as required by 11 U.S.C. § 109. Appellant filed for discovery on April 7, 2017, the day after the Bankruptcy Court served notice that the first hearing in the matter would be an evidentiary hearing. [Doc. 12].

At both the initial telephone conference regarding the evidentiary hearing and on the interim hearing on discovery, the Bankruptcy Court consistently instructed PPF not to litigate its SDNY Litigation claims in the Bankruptcy Court and warned that the court would not judge the propriety of events in the Russian bankruptcy. [Doc. 50, 4/27 Transcript regarding Hearing Held on April 24, 2017, ("4/27 Tr."), pp. 13-14]. The Bankruptcy Court stated that the Receiver's motivation for seeking recognition of the foreign proceeding and the actions of co-defendants in the SDNY litigation to manufacture Chapter 15 jurisdiction, even if illegal, were irrelevant and not subject to the Court's review. *Id.* The Bankruptcy Court limited PPF to discovery of a copy of a Russian bankruptcy court order in a related corporate bankruptcy and the agreement executed by the Receiver with a third-party un-known to him for payment of the funds the Receiver wired from his personal bank account (known in Russia as a "personal

banking mechanism"), not a Debtor's account, to create the alleged Debtor's asset in the Southern District of New York. The Bankruptcy Court stated that how the funds were actually generated was irrelevant so long as, in essence, they ultimately were labeled as belonging to the debtor and located in the Southern District of New York.

Under the circumstances, PPF focused its evidence, including expert testimony, on showing the Debtor's alleged jurisdictional asset – which the Bankruptcy Court had to address for recognition -- was illegally secured, the irregularities in the Receiver's actions, the inconsistencies in the Receiver's positions in the Russian bankruptcy proceeding as opposed to the Chapter 15 proceedings, and the distinct and pervasive pattern and practice of Russian corporate raiding, known as "Reiderstvo" which often included the manipulation of the Russian bankruptcy system. The Receiver offered no rebuttal case to PPF's evidence. Immediately thereafter, PPF sought to re-open the record to introduce evidence linking the third-party that gratuitously provided the funds claimed to be the Debtor's jurisdictional asset to the lead co-conspirator in the SDNY Litigation and evidence of another co-conspirator that sought to have the Debtor imprisoned because of the SDNY Litigation. [Doc. 56]. Again the Bankruptcy Court erred by ruling such evidence was irrelevant. [Doc. 68].

The parties submitted proposed findings and conclusions of law to the Bankruptcy Court. [Doc. 52; Doc. 53]. At final oral argument on the Recognition Petition, notwithstanding its refusal to allow PPF an opportunity to present relevant evidence, the Bankruptcy Court inappropriately criticized PPF for failing to introduce more evidence of the alleged illegality in Russia and stated it had no record to rule in PPF's favor. [Doc. 69; Doc. 70]. The Bankruptcy Court granted recognition in disregard of the record of

irregularities and inconsistencies in the Receiver's actions, much of it un-rebutted, and misapplied the Bankruptcy Code, wrongly finding that a Debtor's asset existed in the Southern District of New York, that the Bankruptcy Court could exercise jurisdiction over an asset not property of the Debtor's estate, and that recognition did not violate United States public policy. [Doc. 70]. Furthermore, the Bankruptcy Court made specific findings of the absence of criminal activity in connection with the Russian bankruptcy cases -- one of the specific issues PPF sought to pursue in discovery by supplementing the record, but which the Bankruptcy Court refused to allow. *Id.* [Doc. 68].

This timely appeal follows.

## IV.   STATEMENT OF FACTS

Appellant PPF is a limited liability company registered under Delaware law with headquarters in Wilmington, Delaware. PPF holds an assignment of the claims of the shareholders (the Debtor and Irina Podgornaya) in Open Joint Stock Company ("OJSC") Pavlovskgranit ("P-Granit"). P-Granit is/was a Russian corporation and the Debtor and Ms. Podgornaya are Russian citizens. The purpose of the PPF assignment is to preserve and pursue the Debtor's and Ms. Podgornaya's claims due to the corporate raiding and ultimate destruction of P-Granit through an independent legal system which adheres to the Rule of Law. In pursuit of its mandate, in November 2016, PPF commenced an action entitled *PPF Management LLC v. OJSC Sberbank of Russia, et al*, Doc. 16-CV-9139, in the United States District Court for the Southern District of New York (previously defined as the "SDNY Litigation") against numerous defendants who conspired to raid P-Granit and stop the Debtor and Ms. Podgornaya from securing damages and the return of their interest. One of the named defendants in the SDNY

Litigation is the Appellee in this matter, Aleksey Vladimirovich Bazarnov, the Foreign Receiver in the Debtor's Russian bankruptcy proceedings. He is named in his individual capacity, not as the Receiver.

On March 6, 2017, the Receiver filed a Petition under Chapter 15 of the Bankruptcy Code seeking recognition in the United States of the Debtor's Russian insolvency proceeding and entry of an order granting relief pursuant to 11 U.S.C. §§ 1515, 1517 and 1520 of the Bankruptcy Code, and seeking an Order providing for, *inter alia*, a stay of the SDNY Litigation. [Doc. 2]. In support of the Recognition Petition, the Receiver asserted that the Debtor had assets within the jurisdiction of the Bankruptcy Court in the form of approximately Twenty Thousand Dollars ($20,000) on deposit in his attorney's trust account and the claims asserted by PPF in the SDNY Litigation. *Id.*

On April 5, 2016, PPF filed an Opposition to the Receiver's Recognition Petition on multiple grounds including that the Receiver was conflicted to serve as the personal representative in the Russian bankruptcy proceeding and the perspective United States Chapter 15 case because he was a co-defendant in the SDNY Litigation, that the Recognition Petition was not intended to protect the Debtor or his creditors but rather to protect the defendants in the SDNY Litigation, and that recognition would violate United States public policy because the Russian bankruptcy and Chapter 15 in the United States was a means to further the corporate raid on P-Granit. [Doc 11]. On April 6, 2017, the Bankruptcy Court notified the parties that the initial hearing scheduled for April 12, 2017 would be an evidentiary hearing. [Doc. 12]. On April 7, 2017, pursuant to Fed. R. Bankr. P. 7030, 7034 and 9014, PPF served the Receiver with a notice of deposition and a request for production of documents. During a court convened conference call the

same day, the Receiver objected to the discovery and, contrary to the Federal Rules of Bankruptcy Procedure, the Bankruptcy Court stated that PPF should have filed the discovery before filing its opposition to the Receiver's Recognition Petition. The Receiver refused to comply with the discovery demands prior to the April 12, 2017 hearing.

The Bankruptcy Court convened the evidentiary hearing on April 12, 2017 without affording PPF the requested discovery. [Doc. 49]. During this hearing, the Receiver was the sole witness to testify on behalf of Receiver. Throughout the hearing, the Bankruptcy Court sustained the Receiver's objections to relevant cross-examination by PPF. In response to PPF raising the Receiver's failure to provide discovery, the Bankruptcy Court directed the parties to file motions to bring the issue before the Court.

Pursuant to the Bankruptcy Court's ruling, on April 11, PPF filed a Motion to compel production of documents and the deposition of the Receiver. [Doc. 28]. In response, the Receiver filed objections to the document requests and a motion to quash. [Doc. 38]. The Receiver objected to every document request sought by PPF on the grounds that they were irrelevant, overbroad and unduly burdensome without explanation, and did not identify whether he had any documents responsive to any of the requests. At the hearing on the discovery motions, the Bankruptcy Court again stated that PPF had improperly delayed in filing the discovery requests (which requests and motions were timely brought forth by PPF under the Federal Rules of Bankruptcy Procedure) and ruled, with the exception of one request, that each of PPF's document requests was improper because they were without time limitations and intended to generate discovery related to the SDNY Litigation or conduct in the Russian bankruptcy. During the course

8

of the hearing, the Bankruptcy Court admonished PPF counsel regarding the scope of the hearing and that PPF was prohibited from attempting to litigate the claims in the SDNY Litigation in the Bankruptcy Court. The Bankruptcy Court sustained the Receiver's counsel's objections to several questions during PPF's cross-examination of the Receiver on the grounds they were irrelevant to the Recognition Petition and the issues before the Bankruptcy Court and that the Bankruptcy Court would not examine how the Russian bankruptcy proceedings were conducted. [Doc. 50; Transcript of the Hearing held on April 27, 2017 ("Tr. 4/27") Court at p. 13:25; 14:1-6]. The Bankruptcy Court allowed extremely limited discovery related to the source of the funds the Receiver transferred to the White & Case LLP trust account. The Receiver produced the limited responsive documents at noon on Friday, April 28, 2017 and the Bankruptcy Court convened the second evidentiary hearing the following Monday, May 1, 2017. [Doc. 51].

At the second hearing, the Receiver called a Russian law expert, Pavel Boulatov, and then rested his direct case. *Id.* PPF presented the testimony of Russian law expert, Kirill Zhukov, and Professor Louise Shelley, an expert on Russian corporate raiding. Zhukov testified, in pertinent part, that the evidence offered by the Receiver demonstrated that the funds deposited with his attorneys were from an outside source and not from the Debtor's estate, that the Receiver did not have the authority to retain the law firm of White & Case LLP as his counsel without prior Russian court approval or notice to the Debtor that alleged estate funds had been received, and that Ms. Podgornaya's claims assigned to PPF and asserted in the SDNY Litigation were not part of the Debtor's bankruptcy estate. Professor Shelly testified about the prevalence of Russian corporate raiding and how manipulation of the bankruptcy courts was a critical component of said

corporate raiding. Pursuant to the Bankruptcy Court's prior rulings barring questions regarding the SDNY Litigation or to specific issues concerning the Russian bankruptcy being conducted inconsistent with Russian bankruptcy procedures, Professor Shelly was not questioned regarding the specific details of wrongdoing in the Debtor's Russian bankruptcy or why the raiding of P-Granit was an example of Russian corporate raiding. The Receiver did not offer rebuttal evidence.

On May 12, 2017, the parties filed proposed findings of fact and conclusions of law with the Bankruptcy Court. [Doc. 52; Doc. 53]. On May 22, 2017, PPF filed a motion to reopen the record in order to update the Bankruptcy Court on a new ruling by the Russian bankruptcy court as well as information showing that the person who provided the funds allegedly deposited by the Receiver in the White & Case trust account was related to the key co-defendants in the SDNY Claims. [Doc. 56]. In addition, PPF sought to introduce a letter from the Receiver in the related P-Granit Invest Russian bankruptcy proceeding seeking the re-opening of criminal charges from 2013 against the Debtor. Pursuant to the letter, one of the grounds offered for arresting the Debtor is his alleged role in filing the SDNY Litigation. On July 19, 2017, prior to hearing final argument on the Recognition Petition, the Bankruptcy Court granted PPF's request to supplement the record with the Russian bankruptcy order regarding whether the SDNY claims are part of the debtor's estate, but denied PPF's motion as to the documents potentially connecting the funds used to establish jurisdiction to the lead defendant co-conspirator in the SDNY Litigation and evidencing that the funds gratuitously provided to the Receiver were more than the unknown third-party earned in a year. [Doc. 67]. In other words – the Bankruptcy Court refused to allow PPF to place evidence into the

record that the funds (which the Receiver claimed provided the requisite jurisdiction in New York) came, not form the Debtor, but from one of the defendant co-conspirators in the SDNY Litigation.

On July 19, 2017 the Bankruptcy Court conducted oral argument. [Doc. 69]. During the argument, the Bankruptcy Court stated that PPF had failed to introduce evidence demonstrating that the alleged manipulation of the Debtor's bankruptcy case was part of a Russian corporate raiding scheme. On July 31, 2017, the Bankruptcy Court issued its final order granting Recognition Petition and, specifically, finding, *inter alia*, that the funds in the White & Case LLP trust account constituted debtor's property within the Bankruptcy Court's jurisdiction and that PPF failed to demonstrate that recognition was contrary to United States public policy. [Doc. 70].

## V.    SUMMARY OF THE ARGUMENT

The Bankruptcy Court improperly denied PPF necessary and requested discovery of documents likely to contain relevant information regarding issues critical to the Receiver's claims and PPF's grounds for opposing Chapter 15 recognition.[2]  The discovery sought by PPF went to the following relevant issues:

a.  whether the Receiver met his burden of showing that the Debtor had an asset within the Southern District of New York so as to establish the Bankruptcy Court had jurisdiction over Recognition Petition;

b.  whether the Receiver seeks to invoke the automatic stay in order to thwart claims in the SDNY Litigation which are the property of PPF and not property of the Debtor's estate;

c.  whether the alleged asset of the Debtor can legitimately be considered to be Debtor's property as required by 11 U.S.C. § 109 or whether the asset is the result of a potentially illegal transaction under Russian law and United States law; and

---

[2] The Receiver did not offer other properly propounded objections to the discovery.

d. whether granting Chapter 15 recognition based on a potentially illegal transaction under Russian law and in furtherance of a the corporate raid of the debtor's business would violate United States public policy in contravention of 11 U.S.C. § 1506.

Contrary to the facts of the case and without PPF having been affording a fair opportunity to obtain necessary discovery or place relevant evidence into the record, the Bankruptcy Court improperly partially denied PPF's motion to re-open the record and excluded evidence relevant to PPF's grounds for opposing Chapter 15 recognition. Contrary to 11 U.S.C. §§ 362 and 1521, the Bankruptcy Court improperly ruled that it could apply the automatic stay against an asset which the Receiver has failed to establish constitutes property of the Debtor's estate.

Contrary to the facts of the case and without PPF having been afforded a fair opportunity to obtain discovery or place relevant evidence into the record, the Bankruptcy Court improperly ruled that the funds in the White & Case trust account constituted the Debtor's asset in this jurisdiction pursuant to 11 U.S.C. § 109.

Contrary to 11 U.S.C. § 1506, the Bankruptcy Court improperly granted the Recognition Petition in contravention of United States public policy despite evidence that the Receiver manufactured jurisdiction by means contrary to Russian law and part of an illicit scheme involving co-defendants in the SDNY Litigation and that the Russian bankruptcy and the Chapter 15 recognition Petition were acts in furtherance of an illegal corporate raid as alleged in the SDNY Litigation. Here the Bankruptcy Court did not need to rely solely on violations of the law, illegal contracts and illegal handling of purported debtor's funds, to invoke section 1506. As a result of legislation passed in 2012, Federal law dictates that sanctions shall be meted out by United States law enforcement to those engaging in human rights abuses and corruption in Russia. *See* The

Magnitsky Act and the United States President's April 2017 letter to state its intent to fight Russian corruption and human rights abuses to the extent that it comes within the United States. As stated above, PPF attempted to introduce evidence that a specific individual subject to the Magnitsky Act sanctions has been involved in the Russian bankruptcy action, but the Bankruptcy Court refused to allow it. Thus, rather than assist the Receiver and the other defendants in the SDNY Litigation by granting Chapter 15 recognition, pursuant to the Magnitsky Act, the Bankruptcy Court should have applied codified United States Policy and invoked section 1506 as grounds to deny recognition.

While the record established multiple irregularities and inconsistency with United States public policy which should have been sufficient to deny recognition, had PPF been granted the opportunity to obtain discovery, and allowed relevant evidence into the record, it would have established an even more fulsome record which would have, in turn, lead to the proper denial of recognition of the foreign bankruptcy case here in the United States.

## VI. STANDARD OF REVIEW

When a District Court reviews a decision of the Bankruptcy Court, it is authorized to "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. Findings of fact are reviewed for clear error. *Id.* Conclusions of law are reviewed de novo. *In re Enron Corp.*, 419 F.3d 115, 124 (2d Cir.2005); *In re Worldcom, Inc.*, 357 B.R. 223, 226–27 (S.D.N.Y.2006). A bankruptcy court's interpretation of the Bankruptcy Code is reviewed de novo. *In re Caldor Corp.*, 303 F.3d 161, 166 (2d Cir.2002). The District Court reviews the Bankruptcy Court findings on discovery under the "clear error" standard. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing

court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *See United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948).

## VII.   ARGUMENT

### A.    Bankruptcy Court Erred and Abused its Discretion Denying PPF Discovery

It is well-settled in the Second Circuit that rules governing discovery should be interpreted broadly. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 756 F.2d 230, 236 (2d Cir. 1985) *citing Schlesinger Investment Partnership v. Fluor Corp.*, 671 F.2d 739, 742 (2d Cir. 1982) ("The federal rules evince a liberal policy with regard to discovery in order to allow litigants to secure helpful evidence from the hands of their adversaries"). The Federal Rules of Civil Procedure embody this principle by permitting parties to "obtain discovery regarding any no privileged matter that is relevant to any party's claim or defense." *S.E.C. v. Rajaratnam*, 622 F.3d 159, 181 (2d Cir. 2010). "Courts have construed this language liberally, 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Even after the December 2015 amendments to the Federal Rules of Civil Procedure, the quantum of relevance necessary to warrant discovery is lower than the quantum of relevance necessary for admissibility at trial. *Almonte v Hines*, 15 Civ. 6843 (PAE)(HBP), 2016 WL 6834015, at *3 (S.D.N.Y. Nov. 18, 2016). Relevance is still to be construed broadly to encompass any information that bears on, or that reasonably could lead to other information that could bear on any parties claim or defense. *Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank*, N.A., 15 Civ. 0293 (LTS) (JCF),

2016 WL 3906712, at *3 (S.D.N.Y. July 14, 2016) (granting in part, and denying in part – defendant had a detailed affidavit about document collection and expense).

Finally, general boilerplate objections are no longer allowed. *Leibovitz v. City of N.Y.*, 15 Civ. 546 (LGS)(HBP), 2017 WL 462515, at *2 (S.D.N.Y. Feb. 3, 2017). Specifically, the resisting party must show how, "despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant, or how each request is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden." *Sokol v. Wyeth*, Inc., No. 07 Civ. 8442(SHS)(KNF), 2008 WL 3166662, at *3 (S.D.N.Y. Aug. 4, 2008); *Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, No. 10 civ. 3314 (RWS), 2016 WL 1659316, at *1 (S.D.N.Y. Apr. 15, 2016).

## 1. PPF Notice of Deposition and Request for Production

PPF's legitimate discovery efforts were intended to pursue potentially probative information to which it was clearly entitled. PPF propounded a list of twenty three (23) categories of documents to be produced by the Receiver at a deposition. [Doc. 26]. As a result of the compressed time frame, although PPF served the discovery prior to the first day of the evidentiary hearing, April 12th, cross-motions to compel and quash were not filed until April 11th and a hearing was conducted and the Court ruled from the bench on April 27th. In an abuse of its discretion and clearly erroneous, the Bankruptcy Court ruled that all but one (no. 23)[3] of PPF's categories of documents were entirely irrelevant on the grounds that all were overbroad because they were not limited as to time and because they were designed to seek information in furtherance of the SDNY Litigation or delve

---

[3] The Bankruptcy Court allowed partial discovery on request no. 23 and directed the Receiver to produce two contracts he had entered into with an unknown third-party for the funds he deposited into the White & Case trust account and a related Russian court order from the P-Granit Invest bankruptcy proceeding.

into events in Russia which the Bankruptcy Court would not assess as part of its review of a Chapter 15 Petition for Recognition.

### 2. Bankruptcy Court Determination to Deny PPF Discovery is Clearly Erroneous and Contradicted by the Court's Own Subsequent Findings

As a threshold matter, the Bankruptcy Court erred and abused its discretion by basing its ruling in the categories not being limited in time. [Doc. 33]. The instructions to the document list stated: "The requests seek document from January 1, 2016 to date." [Doc. 26].

PPF's document requests were directed to develop information probative of the legitimacy of the Receiver's Petition for Chapter 15 recognition both as to the jurisdictional requirement that a debtor's asset exist in the jurisdiction of the court and to the general requirement that the Chapter 15 proceeding was properly intended to pursue the interest of creditors or the Debtor's estate. Moreover, since the true object of the Receiver's efforts was to thwart the SDNY Litigation against him and his alleged co-conspirators, the discovery sought information regarding the Receiver's treatment of the claims prior to and after the assignment to PPF and the filing of the SDNY Litigation. Concomitantly, PPF also sought documents pertaining to its objections to Chapter 15 recognition. Some of the later requests overlapped with the requests regarding the Receiver's treatment of the claims since the Receiver expressed the specific intent to thwart the claims raised in the SDNY Litigation. Such discovery directly related to whether granting Chapter 15 recognition would fall within the scope of 11 U.S.C. § 1506 which provides for denial of Chapter 15 Petition if recognition would be contrary to United States public policy.

Specifically, PPF should have been allowed to pursue the following requests for documents. Proof that each request related to the Receiver's allegations is that he addressed each in his direct testimony before the Bankruptcy Court. Moreover, the document requests seek information related to the objections plead by PPF:

a. Request No. 1. All documents that concern, refer or relate to your appointment as a Receiver in the Poymanov personal bankruptcy. How and why the Receiver was selected to administer the Debtor's Russian bankruptcy case relates to PPF's objection pursuant to 11 U.S.C. §§ 1507 and 1510 and whether the Chapter 15 petition is actually intended to further the corporate raid of P-Granite which now includes thwarting the SDNY Litigation.

b. Request No. 9. Documents sufficient to identify every potential asset you have considered recording as an asset of the debtor's estate in the Poymanov personal bankruptcy, including both assets recorded and assets rejected. How the Receiver treated the Debtor and Ms. Podgornaya's claims previously is relevant to whether he genuinely seeks to protect the interest of the creditors and the debtor's estate (see 11 U.S.C. § 1507) and seeks to stay an actual asset of the debtor's estate or whether he seeks to further the corporate raid of P-Granite.

c. Request No. 10. Documents sufficient to identify the basis for your decision regarding every asset identified in document responsive to the preceding document request. *See* (b) above.

e. Request No. 11. All documents that concern refer or relate to your assessment of the merits of the claims set forth, or the potential financial exposure to the defendants in the SDNY Litigation.

f. Request No. 16. All documents that concern, refer or relate to the original or intermediate source(s) of funds paid to your attorneys for the Chapter 15 proceedings. The source of funds is relevant to whether the Debtor has an asset in the Southern District of New York for purposes of jurisdiction of the Bankruptcy Court and whether he seeks to further the corporate raid of P-Granit.

g. Request No. 19. All documents and communications, to the extent not produced in response to Requests 7-10, concerning your intended actions regarding SDNY claims.

h. Request No. 21. All documents evidencing that "the claims purportedly assigned by Poymanov to PPF were assets to his bankruptcy estate as of July 21, 2016" as described by you in ¶34 of the Petition.

i. Request No. 22. All documents and communication concerning your motion filed in the Russian Bankruptcy Court, identified by you in ¶35 of the Petition.

j. Request No. 23. Documents sufficient to identify the original or intermediate source(s) of the funds transferred by you to a client trust account at Citibank in New York County, and identified by you in ¶38 of the Petition.

In addition, the following document requests seek relevant information on the same grounds:

a. Request No. 6. All documents that concern, refer or relate to communications with Kirill Nogotkov. The Receiver testified that Nogotkov was involved in securing the funds necessary to manufacture a debtor's asset in the jurisdiction of the court. Furthermore, although excluded by the Bankruptcy Court, there exists documentation demonstrating that Nogotkov was part of an effort to retaliate against the Debtor and have him criminally prosecuted in Russia because of the SDNY Litigation, in which Nogotkov is a named defendant. Thus the request seeks information related to the intent of the filing of the Chapter 15 Petition.

b. Request No. 8. All documents that concern, refer or relate to communications with Suintex or Arismet regarding the Poymanov personal bankruptcy or SDNY Claims.[4]

c. Request No. 12. All documents that concern, refer or relate to the valuation of P-Granit assets.

d. Request No. 13. All documents that concern, refer or relate to your refusal to support Poymanov's motion filed on July 21, 2016 to re-evaluate the values of shares in P-Granit.

e. Request No. 14. All documents that concern, refer or relate to communications with the General Prosecutor's Office of the Russian federation regarding Poymanov. These documents could shed light on whether (a) the Debtor's Russian bankruptcy is a collective proceeding, and (b) the Receiver, in seeking to control the SDNY Litigation, is intending to act in the interests of the Debtor and the Debtor's estate and any creditors not named in the SDNY Litigation or rather to thwart the SDNY Litigation.

---

[4] Suintex and Arismet are the two recorded creditors in the Debtor's bankruptcy case.

Further evidence that the Bankruptcy Court abused its discretion in quashing PPF's discovery requests is that the Bankruptcy Court improperly sought to segregate events in Russia which would shed light on the bona fides of the Chapter 15 Petition. *See* Tr. 4/27; Court at p. 13:25; 14:1-6. While courts have ruled that bankruptcy judges are not to get behind foreign bankruptcy proceedings, courts have also held that the United States bankruptcy courts are not simply to act as a rubber stamp and that 11 U.S.C. § 1506 exist for a reason. Foreign applicants do not have carte blanche to bring tainted proceedings to the United States in furtherance of illicit activity. Objecting parties should be given the opportunity to pursue issues when they have a good faith basis to do so as PPF has here.

Finally, proof that the Bankruptcy Court abused its discretion in quashing PPF's discovery is the Bankruptcy Court's criticism of PPF in the Decision to Grant the Chapter 15 Petition for not introducing more evidence in support of its objections.[5]

a. "PPF has failed to present any evidence that the Russian Insolvency Proceeding is part of a corporate raiding scheme against Poymanov."

b. "PPF has not demonstrated that the Petitioner has engaged in any bad faith dealing or criminal activity in connection with the Russian Insolvency Proceeding (or otherwise)."

c. "Nor has PPF demonstrated that there has been any impropriety or corruption attributable to the Russian Court in connection with the Russian Insolvency Proceeding."

d. "PPF has not provided any evidence to support a finding that the Russian Insolvency Proceeding was commenced for the purpose of stealing either P-Granit or P-Invest from Poymanov, or that the Petitioner has

---

[5] At the April 27, 2017 hearing, the Bankruptcy Court held: "many of them, on their face, are clearly not addressing or in any way relevant to the issues before me on the recognition petition. They are trying to get behind and second guess the propriety of decisions by courts in Russia, or they are calculated, by their expressed terms, to address the claims in the Southern District litigation." See Doc. 51, Tr. 1/5, pp. 13:25-14:1-5.

> participated in any conspiracy to gain control of "Poymanov's company."

*See* Doc. 70 at pp. 15, 24-25. In comparable circumstances, Appellate Courts, or court's sitting in its appellate capacity, have reversed when trial court's rulings is based on an issue on which a party sought and the lower court refused to allow discovery. *Miller v. No. Am Coal Corp.*, 870 F.2d 948 (3rd Cir. 1989) (ALJ refused to allow discovery from expert reversed on the grounds that the court's reliance on the report rendered the denial of discovery a due process violation.); *Salahuddin v. Coughlin*, 993 F.2d 306, 309 (2nd Cir. 1993) (Lower court denial of discovery was reversible error when Court relied upon issues in granting summary judgment); *In re Polaroid Corp.*, 527 B.R. 335, 347-48 (D.Mn. 2015). (Bankruptcy Court denial of discovery and entry of summary judgment based, in part, on the lack of evidence in particular area where discovery reversed on appeal by District Court found to be reversible error and an abuse of discretion.

Rather than objecting to the particular requests or categories of discovery sought by PPF, the Receiver baldly stated that the Bankruptcy Court had jurisdiction and that he had met his burden to prove the three-prong requirement for recognition. The Bankruptcy Court committed a clear error by accepting the Receiver's presumptive arguments that did not support his refusal to produce any documents beyond a few self-selected documents. The Bankruptcy Court abused its discretion by accepting the Recover's boiler plate objection without any factual support other than relevance.

## B. Bankruptcy Court Committed a Clear Error and Abused its Discretion by Declining to Re-open the Record for Evidence of Conspiracy and Retaliation in Russia

The authority to reopen evidence prior to the entry of judgment is derivative of the authority conferred pursuant to Rule 59 of the Federal Rules of Civil Procedure,

incorporated into Rule 9023 of the Federal Rules of Bankruptcy Procedure.[6] In circumstances where judgments have not been entered, courts have found the presumptive authority to reopen the record. *In Matter of Dunson*, 2014 WL 7793689, Case No. 13010604 - 607, slip op. at 2 (Bankr. N.D. Ga. 2014), citing 12 MOORE'S FEDERAL PRACTICE section 59.13(3)(c) (Matthew Bender 3d ed. 2002) ("A Rule 59 motion is distinct from a motion to reopen to take additional testimony. A Rule 59 motion is made only after the entry of a judgment, whereas a motion to reopen is most commonly made ... while the judge has the case under advisement...."). The court's authority and the decision to reopen an evidentiary record prior to judgment is "committed to the sound discretion of the [ ] court." *Romeo v. Sherry*, 308 F.Supp.2d 128, 138–39 (E.D.N.Y. 2004) (internal citations omitted).

The Bankruptcy Court abused its discretion by refusing to re-open the record and allow PPF to admit the following supplemental evidence:

1) The "Pavloskgranit-Invest Bankruptcy Evidence" -- the April 4, 2017 letter sent by Kirill Nogotkov, the receiver in the Pavlovskgranit-Invest Bankruptcy[7] ("Nogotkov") to the Head of the Investigative Committee of the Russian Federation (Russian FBI), Alexander Ivanovich Bastrykin ("Bastrykin"); and

2) The "Gureev Evidence" – Documents linking Petr Gureev to a lead co-conspirator named as a defendant in the SDNY Litigation and showing he did not have the financial whetherwithal to engage independently in the transaction with the Receiver as the Receiver alleged ("the Gureev Payment"). Whether the Gureev Payment could legitimately be considered to be part of the Debtor's bankruptcy estate prior to Receiver wiring these funds into the White & Case LLP trust account in New York in order to manufacture an alleged asset of the Debtor for purposes of 11 U.S.C. § 109 jurisdiction is the Receiver's burden of proof. *See infra* pp. 28-29.

---

[6] The relief provided for pursuant to Rule 59 of the Federal Rules of Civil Procedure is "[a]fter a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Fed. R. Civ. P. 59(a)(2).

[7] Pavlovskgranit-Invest was the holding company for the Debtor's interest in P-Granit and was forced into bankruptcy as part of the corporate raid on P-Granit.

The Pavlovskgranit-Invest Bankruptcy Evidence repeated - Nogotkov's previously closed, four year old criminal complaint against the Debtor and asked Bastrykin to personally oversee an audit and re-examination of the complaint. As part of the justification for renewing the criminal case against the Debtor, Nogotkov informed Bastrykin that the Debtor was involved with PPF filing the SDNY Litigation. *Id.*[8] This evidence was relevant to the issues that the Bankruptcy Court should have denied recognition under section 1506 of the Bankruptcy Code. It demonstrated that the so-called legal actions taken against the Debtor in Russia, including his personal bankruptcy, was in furtherance of the corporate raiding scheme and that the United States Chapter 15 proceeding was a crucial component of the conspiracy to thwart the SDNY Litigation.

The Pavlovskgranit-Invest Bankruptcy Evidence further demonstrates that the Receiver and Nogotkov, the receiver in the Pavlovskgranit-Invest bankruptcy, abused the United States legal system when the Receiver filed the Chapter 15 Recognition petition for an illegal purpose. Such actions are contrary to United States rule of law and public policy. Generating criminal charges against the target of a corporate raid is consistent with Dr. Shelley's description of the well-established pattern and practice of Russian corporate raiding known as "Reiderstvo". Doc. 51, Transcript regarding Hearing Held on May 1, 2017, Shelley Tr. 5/1 at p. 103. Chapter 15 recognition in this case will make the Court an unwanted party to the misuse of the Russian bankruptcy system in furtherance of *Reiderstvo* and in contravention of section 1506 of the Bankruptcy Code. In complete contradiction, the Bankruptcy Court refused to admit the evidence, while at the same

---

[8] PPF counsel first became aware of the letter on May 16, 2017. The Bankruptcy Court did not find undue delay in seeking to re-open the record.

time, the Bankruptcy Court's Recognition Order held that PPF failed to provide any evidence that demonstrate that public policy was violated. *See supra* at p. 19.

The Gureev Evidence is relevant to the issues of jurisdiction and qualification for recognition because it sheds light on whether the payments actually belonged to the Debtor before they were transferred to the White & Case trust account. Specifically, the series of documents reveal that Gureev - the man who miraculously appeared out of thin air and gratuitously paid the Receiver the cash needed and used to create a Debtor's asset in New York, *i.e.,* the "Gureev Payment") was linked to the lead co-conspirator to the corporate raid on P-Granite. The source of the Gureev Payment was allegedly debt Gureev claimed to have purchased in the parallel Pavlovskgranit-Invest Bankruptcy proceedings where the Debtor is a creditor. [*See* Doc. 56]. No evidence of this alleged debt purchase was provided. At the time the Receiver testified about this critical element of his Recognition Petition, the Receiver neither knew of any relationship between Gureev and the Debtor or his prior companies, why Gureev paid that particular amount (there is no correlation between the amount of the payment and the debt), how Gureev was employed, nor Gureev's first name. Bazarnov, 4/12 Tr. at pp. 63-64, 91-92. The evidence PPF sought to submit also demonstrates that Gureev lacked the financial resources to personally fund the Receiver, further evidencing the funds were from an illicit source and not an asset of the Debtor. [Doc. 53, Zhukov Decl. at ¶ 9].

The Gureev Evidence also corroborates PPF witness Zhukov's testimony at the May 1, 2017 hearing, that the Gureev Payment could be invalid as a matter of Russian law on the grounds that a court may constitute the proceeds of what is known in Russia as a "mock and sham transaction". [Doc. 51, *Zhukov*, Tr. 5/1, at pp. 46-47]. Such a result

would nullify any possibility of the funds becoming property of the Debtor's estate under the Russian law. [Doc. 53 at pp. 18-19].

Reopening the evidentiary record in this matter was not unduly prejudicial to the Receiver, because evidence was either in his possession during the evidentiary hearing or he had the ability to obtain such evidence, but affirmatively chose not to do so. [*See* Doc. 49, Transcript regarding Hearing Held on April 12, 2017, Bazarnov, 4/12 Tr. at pp. 63-64].

The Bankruptcy Court's refusal to allow the record to be supplemented unduly prejudiced PPF. Moreover, the Bankruptcy Court held it against PPF and unduly found in the Recognition Order that "PPF has not presented any evidence of impropriety with respect to the Petitioner's entry into the Gureev Agreements." Doc. 70 at p.12. The motivation and details behind the Gureev Payments demonstrates their impropriety and that the Gureev Payment cannot serve as basis for United States jurisdiction.

## C. Bankruptcy Court Erred in Ruling that Property of the Debtor, as Opposed to Property of the Debtor's Bankruptcy Estate Under 11 U.S.C. § 542, is Subject to the Automatic Stay of 11 U.S.C. § 362(a).[9]

The Recognition Order entered by the Bankruptcy Court incorrectly stated that the stay imposed by Section 362 of the Bankruptcy Code applies to property of the Debtor, as opposed to property of the Debtor's estate:

> Accordingly, the Court concludes that the automatic stay applies with respect to property of Poymanov within the territorial jurisdiction of the United States. The Court finds that the extent to which the SDNY Claims are property of Poymanov to be administered in the Russian Insolvency Proceeding, and, as such, subject to the automatic stay . . . .

---

[9] On September 6, 2017, the Receiver filed a motion with the Bankruptcy Court seeking to enforce a stay of the SDNY Litigation pursuant to the language in the Recognition Order and Sections 362(a)(1) and (a)(3) of the Bankruptcy Code. As of the date of this brief, the Bankruptcy Court's decision on the Receiver's motion remains pending.

Recognition Order at p. 30.

The stay provisions of the Bankruptcy Code differentiate between acts against the debtor, against property of the debtor and against property of the estate. *In re Hale*, 535 B.R. 520, 525 (Bankr. E.D.N.Y. 2015) (citing *In re Jones*, 339 B.R. 360, 363 (Bankr. E.D.N.Y. 2006)).

> Section 362(a)(1) states actions are proceedings "against the Debtor;"....Section 362(a)(3) states "any action to obtain possession of property of the estate or property from the estate...." Section 362(c)(1) provides that "the stay of an act against property of the estate under Subsection (a) of this section continues until such property is no longer property of the estate."

*Id.* Section 362(a)(3) does not apply to property of the debtor personally or property that is not property of the estate. *In re Klinger*, No. 01-32463 (LMW), 2007 WL 2262519, at *15 (Bankr. D. Conn. Aug. 6, 2007).

1. **Section 362(a)(1) of the Bankruptcy Code is Inapplicable Because the SDNY Litigation is Not an Action, Proceeding, or Claim Against the Debtor.**

Section 362(a)(1) states that the filing of a bankruptcy petition under Sections 301, 302, or 303, of this title operates as a stay of:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding *against the debtor* that was or could have been commenced before the commencement of the case under this title, or recover a claim *against the debtor* that arose before the commencement of the case under this title;

11 U.S.C. §326(a)(1) (emphasis provided).

The SDNY Litigation is not an action, proceeding, or claim against the Debtor. The SDNY Litigation asserts claims against numerous non-debtor defendants based on rights to claim pecuniary damages and harm once owned by the Debtor and his ex-wife, Ms.

Podgornaya. Neither the Debtor nor the Debtor's estate is a defendant in the SDNY Litigation. Accordingly, the stay of Section 362(a)(1) does not apply to the SDNY Litigation.

### 2. Section 362(a)(3) of the Bankruptcy Code Does Not Stay Actions Against Property that is Not Property of the Estate.

Section 362(a)(3) of the Bankruptcy Code provides, in pertinent part, for a stay of "any act to obtain possession of *property of the estate* or *property from the estate* or to exercise control of a *property of the estate*." 11 U.S.C. § 362(a)(3) (emphasis provided). The key phrase in Section 362(a)(3) for purposes of resolving the instant matter is "property of the estate." *Schaffer v. CC Investments, LDC.*, 286 F. Supp.2d 279, 281 (S.D.N.Y. 2003) (denying defendant's motion for a stay of action pursuant to § 362). Section 362(a)(3) does not stay actions against property that is not property of the estate. *In re Cruz*, 516 B.R. 594, 602-01 (B.A.P. 9th Cir. 2014); *In re Wilborn*, No. 14-00995, 214 WL 4678423, at *2 (Bankr. D. Haw. Sept. 18, 2014); *In re Xtra Petroleum Transport, Inc.*, 473 B.R. 430, 43 (Bankr. D.N.M. 2012); *In re Brittain*, 435 B.R. 318, 321 (Bankr. D.S.C. 2010); *In re Moore*, 410 B.R. 439, 441 (Bankr. E.D. Va. 2009).

Furthermore, even if, arguendo, the Debtor's claims assigned to PPF may have once belonged to his bankruptcy estate (prior to the assignment), the stay provided for in § 362(a)(3) of actions against "property of the estate expires once the property is no longer property of the estate." 11 U.S.C. § 362(c)(1). Accordingly, whether or not the assignment of the Debtor's SDNY Litigation claims may be voided or not, the stay only applies if the claims are currently property of his bankruptcy estate – the stay does not apply to property outside the bankruptcy estate, whether property of PPF or property of the Debtor. Section 362(c) thus describes when and under what circumstances the automatic stay ends automatically. *Hale*, 535 B.R. at 522. *See also In re Gant*, Bankruptcy No. 10-01363-BGC-

13, Adversary No. 10-00157-BGC, 2011 WL 7069458, at *2, (Bankr. N.D. Ala. June 16, 2011) (statute calls for immediate termination of the automatic stay once asset no longer property of the estate).

The "first step in interpreting a statute is to determine whether the language at issue had a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997). The statutory language in Section 362 at issue in this matter is clear, plain and unambiguous. As the Supreme Court has observed "[o]ur" inquiry must cease if the statutory language is unambiguous and the 'statutory scheme is coherent and consistent.'" *Robinson*, 519 U.S. at 340, 117 S. Ct. 843. *See Connecticut National Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 117 L. Ed. 391 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal cannon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what is says there.... When the words of a statute are unambiguous, then, this first cannon is also the last: 'judicial inquiry is complete.'").

Furthermore, Section 1520 of the Bankruptcy Code states, *inter alia*, that upon recognition of a foreign main proceeding, Section 362 of the Bankruptcy Code applies with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States. 11 U.S.C. § 1520(a). The issue is not whether, upon recognition, a foreign proceeding under Chapter 15 may apply the provisions of Section 362 of the Bankruptcy Code, but whether the specific sections of 362 (in this case sub-section (a)(3) which expressly only applies to property of the estate), applies to the claims asserted in the SDNY Litigation. It emphatically does not.

In this case, the inquiry is complete. Section 362(a)(1) only applies to actions against the Debtor - the SDNY Litigation is not an action against the Debtor. Section 362(a)(3) only applies to property of the Debtor's estate—which is distinguishable from property of the Debtor. Here, the Moscow Region Arbitrazh Court's (the "Russian Court") refusal to require the return the Debtor's SDNY :Litigation claims to the bankruptcy estate and its denial of the Receiver's request to do so renders the automatic stay inapplicable.[10] Pursuant to Section 362(a)(3), any stay is terminated as a matter of law upon the property no longer being property of the estate.

Accordingly, the Bankruptcy Court erred in its application of the Bankruptcy Code by stating that the automatic stay applies with respect to property of the Debtor, contrary to the express limitation of the Bankruptcy Code which only stays the SDNY Litigation if such claims are first found to be property of the Debtor's estate—an important distinction rendered by the unambiguous language of the statute enacted by Congress.

**D.      Bankruptcy Court Erred in Finding that the Funds Deposited in the Law Firm Trust Account in the United States Constituted an Asset of the Debtor.**

As a threshold matter, a party seeking Chapter 15 recognition has to demonstrate that there is property of the debtor found in the jurisdiction. 11 U.S.C. § 109(a). For the purposes of the Chapter 15 case, the foreign representative must prove that the foreign debtor has property in the United States in order to obtain recognition of the Russian bankruptcy proceeding and the burden does not shift to an objector outside of an involuntary bankruptcy case. Furthermore, the court is to take into account all facts

---

[10] On July 31, 2017, the Russian Court issued its ruling with respect to the assignment of the claims in the SDNY Litigation to PPF from the Debtor and Ms. Podgornaya, in which the Russian Court: (a) dismissed the Receiver's request to void the assignment of Ms. Podgornaya's claims to PPF, which was clearly never property of the Debtor nor the Debtor's estate; (b) avoided the transfer of the Debtor's claims to PPF, but denied the Receiver's request to return the claims to the bankruptcy estate; and (c) imposed costs of the action against the Receiver because his applications were dismissed. On October 11, 2017, the Tenth Arbitrazh Court of Appeal entered a decree upholding the ruling of the Russian Court in full.

regarding eligibility, and the extent the foreign representative is unable to satisfy his burden, the court should dismiss the petition. *See In re Gold & Honey, Ltd.*, 410 B.R. 357, 366 (Bankr. E.D.N.Y. 2009) (citing *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 335 (Bankr. S.D.N.Y. 2008)); Caplin & Drysdale, Chartered, *Chapter 15 at 11: Threshold Requirements for Recognition*, March 24, 2017, *available at* http://www.lexology.com/library/detail.aspx?g=a257ab5d-a8bf-454b-a13f-ce5299f84e05 (stating "[a]s the petitioning party, the foreign representative has the burden of establishing the elements for recognition through evidence," and discussing the Second Circuit's reversal of lower court decisions in *Drawbridge Special Opportunities Inv. Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 247 (2d Cir. 2013), holding that the threshold eligibility requirements for bankruptcy relief in Section 109(a) of the Bankruptcy Code apply to foreign debtors in Chapter 15 where the foreign representatives had made no attempt to show that the foreign debtor had a domicile, place of business or property in the United States) (emphasis provided).[11]

The Receiver's burden is consistent with that in other chapters of the Bankruptcy Code where filing entities are obligated to satisfy the eligibility requirements of a debtor and courts are required to dismiss petitions filed by debtors that fail to satisfy the Section 109 eligibility requirements. In *In re New City Off-Track Betting Corp.*, 427 B.R. 256 (Bankr. S.D.N.Y. 2010), a public benefit corporation that operated a pari-mutuel betting

---

[11] *See also* Mayer Brown, *Second Circuit Holds that Chapter 15 Debtors Must Satisfy Eligibility Requirements of Section 109(a) of the Bankruptcy Code in Order to be Eligible for Relief, available at* https://www.mayerbrown.com/files/Publication/f089121e-a335-4b24-b206-faa886f1c0a7/Presentation/PublicationAttachment/1a88ee0e-c247-49b1-9803-ffb781c5995c/131216-UPDATE-RBI.pdf (December 18, 2013) ("In support of a petition for recognition under chapter 15, therefore, *a foreign representative* must demonstrate that the foreign debtor resides or has a domicile, a place of business, or property in the United States.") (emphasis provided).

system, which was created by the New York State Legislature to, among other things, raise revenues for the state and certain municipalities, suffered from financial distress, were unable to keep pace with mandatory statutory distributions to the state and local governments, and filed a voluntary petition for relief under chapter 9 of the Bankruptcy Code. The New York Racing Association, Inc. objected to the petition, arguing, among other things, that the alleged debtor did not satisfy the requirements of being a debtor. While granting the petition, the court held "the burden of proving eligibility lies with the entity filing the petition." *Id.* at 264 (internal citations omitted).

The limited cases that discuss the source of the funds deposited in an attorney trust account for the purpose of establishing jurisdiction in a Chapter 15 case are distinguishable because they involved a consensual, agency relationship between the foreign debtors and the foreign representatives, or the foreign representative was acting on behalf of the foreign debtor in an attempt to defend litigation brought against the debtor. *In re Berau Capital Resources Pte Ltd*, 540 B.R. 80 (Bankr. S.D.N.Y. 2015); *In re Octaviar Administration Pty*, 511 B.R. 361 (Bankr. S.D.N.Y. 2014). Here, no agency relationship exists between the Debtor and the Receiver. Nor is the SDNY Litigation against the Debtor. Furthermore, the retainer account established to secure U.S. counsel for the Receiver provides no benefit to the Debtor, but is a self-serving act to enable Receiver to seek to stay the SDNY Litigation against himself and his co-conspirators. There are no reported cases where there is no direct linkage of jurisdictional asset to the debtor's estate, no case allowing for an asset which has such an attenuated connection or has the Receiver taking personal possession of the asset.

### a. The Bankruptcy Court Erred in Finding that the Funds Deposited in the Trust Account were Ever Property of the Debtor.

The Receiver failed to provide sufficient evidence to demonstrate that the money deposited in the White & Case trust account came from the Debtor or his bankruptcy estate and the Bankruptcy Court denied PPF's multiple requests for discovery and to submit evidence concerning this very issue. Yet, the Bankruptcy Court erroneously found that "the Petitioner has provided sufficient evidence to demonstrate that the Retainer Account is property in the United States belonging to Poymanov, and PPF has not rebutted that evidence." [Doc. 70 at p.12].

The Receiver contended that the funds, provided by Gureev, were deposited by the Receiver in his personal bank account, rather than in the Debtor's or the Debtor's estate bank account, and wire transferred to the White & Case trust account, is property of the Debtor in the United States.[12] However, a bank trust account in the SDNY only qualifies as an asset for bankruptcy jurisdiction purposes if the funds transferred to the trust account are first established to be funds of the Debtor. *See Drawbridge Special Opportunitie Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 247 (2d Cir. 2013); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399 (Bankr. S.D.N.Y. 2014).

Moreover, the Receiver failed to establish that he transferred funds from a Debtor's estate account to the White & Case account in compliance with Russian law. [*See* Doc. 53, Ex. 5]. To the contrary, the only evidence provided by the Receiver shows the funds never flowed through any of the Debtor's accounts, as required by Russian bankruptcy law. The documents produced by the Receiver were wire transfer

---

[12] Zhukov testified that the wire transfers to the White & Case trust account, Receiver's Ex. A-D - did not come from a Debtor's Estate account, but rather reflected the use of a personal account. [Doc. 51, Zhukov, 5/1 Tr. at pp. 39:14-25; 40:3-5]. Zhukov referred to transfers as the use of a "personal mechanism."

31

instructions that show he transferred money into the White & Case trust account by four (4) separate transfers through a personal banking mechanism, not from an account of the Debtor or the Debtor's estate. Under Russian bankruptcy law, the Receiver is prohibited from paying funds from the debtor's estate pursuant to a personal payment mechanism, [*Id.*, Doc. 51, Zhukov, 5/1 Tr. at pp. 39:14-25; 40:3-5]. Further, had the Gureev Payment been established to be the property of the Debtor, the Receiver violated Russian law by transferring the money without prior Russian bankruptcy court order. Petitioner's Exhibits A-D, article 213(9) of the Russian Bankruptcy Code; Doc. 51, Zhukov, 5/1 Tr. at pp. 39:14-25; 40:3-5.

Accordingly, the Receiver has failed to meet his burden of proof in that the funds on deposit in the White & Case trust account do not constitute property of the Debtor, and as such, the funds cannot serve as the basis for the Bankruptcy Court's jurisdiction.

**b.    PPF demonstrated that the Funds were the Result of a Transaction that Contravened Russian Law.**

The Receiver entered into the Gureev Agreements in an illicit effort to improperly create alleged Debtor property in the Southern District of New York. As the receiver, Appellee had an obligation to protect the interests of the Debtor Poymanov, the Debtor's estate and his creditors.

As a licensed Receiver, Appellee breached his duty by failing to conduct any due diligence on the form or substance of the Gureev Agreements:

1.    The Receiver should have known that although Section 313 of the Russian Civil Code on its face provides for the gratuitous payment of third-party debt, it has been abused and, in particular, it has been abused by parties seeking to manipulate bankruptcy proceedings. Accordingly, the Receiver should have conducted due diligence regarding Gureev's motive to pay the debt and, in particular, whether Gureev intended to "harm" the Debtor or any other party to the bankruptcy, because such an intent would constitute "bad

faith" under Russian law and would invalidate a transaction made pursuant to Section 313.

2.     The Receiver executed the Gureev Agreements which were drafted in a way to create the appearance that Gureev was receiving something of value, corporate debt owed to the Debtor, in connection with his voluntary contribution of funds to the Debtor's personal bankruptcy estate. However, Gureev's receipt of corporate debt was illusory because pursuant to the April 8, 2015 Order entered in the Pavlovgranit-Invest bankruptcy, the Debtor was not allowed to be paid until the recognized debts owed to first tier creditors - Suintex Ltd. and OOO Arismet - were paid.

3.     The Receiver failed to establish that he deposited the funds paid by Gureev into an account in the name of the Debtor's bankruptcy estate. If so deposited, he could have properly wired the funds in a lump sum to the White & Case trust account consistent with Russian law. The wire transfer through the personal mechanism available to private individuals, as opposed to in his capacity as a fiduciary receiver, was inconsistent with the funds being deposited in a Debtor's estate account.

4.     The Receiver failed to establish that he transferred funds from a Debtor's estate account to the White & Case trust account, which would be a requirement under Russian law. Assuming the Receiver had deposited the Gureev funds in a debtor's estate account, it would be a violation of Russian and United States Law for him to co-mingle the funds in a personal account or to use a personal mechanism to transfer the funds to the White & Case trust account. [Doc. 51; Zhukov, 5/1Tr. at pp. 58:24-25; 28 U.S.C. § 586; *see also* Handbook for Chapter 7 Trustees issued by the U.S. Department of Justice, Executive Office for United States Trustees, Sec. D at pp. 5-3.].

The Receiver offered no direct or rebuttal testimony to contradict that the Gureev Agreements were voidable under Russian law as a "mock and sham" transactions as established by Mr. Zhukov. [Doc. 51; Zhukov 5/1, Tr. at pp. 47:6-48:12].

**E.     Bankruptcy Court Failed to Exercise its Discretion under 11 U.S.C. § 1506 to Deny the Foreign Administrator's Petition for Recognition**

The Bankruptcy Court was required to deny recognition where recognition violates United States public policy. *See* 11 U.S.C. § 1506. The Bankruptcy Court

abused its discretion by disregarding the evidence in the record demonstrating that the Petition was founded on the Receiver's violation of Russian law and inconsistent with corporate U.S. bankruptcy requirements[13] and refusing to admit evidence proffered by PPF which supported its assertion that Recognition was sought to further the corporate raid of P-Granit and to thwart recovery of damages for the corporate raid.[14] In addition to disregarding evidence of the violation of Russian and U.S. law and the inherent contradiction of U.S. policy for adherence to the rule of law, the Bankruptcy Court ignored the U.S. policy established under the Magnitsky Act and specifically applicable to one of the Russian individuals involved in the Russian proceedings. *See infra* at p. 37.

### a. The Record Shows That Recognition of this Chapter 15 Petition Contravenes United States Public Policy

Section 1506 provides: "Nothing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States." The Bankruptcy Court abused its discretion by granting recognition despite the following record and refusing to admit probative evidence of the violative conduct. U.S. Bankruptcy Courts are not to act as rubber stamps in the recognition process. *In re Vitro*, 701 F.3d 1031 (5th Cir. 2012); *In re Gold & Honey, Ltd.*, 410 B.R. 357, 366 (Bankr. E.D.N.Y. 2009). The Bankruptcy Court may consider any and all facts relevant to recognition and proof on any element. *Id.* Foreign applicants must carry their burden of proof of particular proceedings. *Id.* However, the Bankruptcy Court repeatedly noted that it could not second guess Russian proceedings

---

[13] The Gureev Agreement and the retention of White and Case, *see infra* at p. 31, and the Receiver running the Debtor's funds through the personal mechanism, *see infra* at pp. 32-33.

[14] As discussed above, the Court refused to allow PPF to pursue discovery designed to secure information relevant to the linkage between the corporate raid of P-Granite and the Petition for Chapter 15 Recognition. The Receiver's Petition affirmatively concedes that the purpose for filing for recognition is to thwart the SDNY Litigation filed to secure accountability for the P-Granite corporate raid.

and cited to the case law holding that it should not investigate the Russian bankruptcy proceedings. *See* Recognition Decision at pp. 23-25. The Bankruptcy Court abused its discretion by refusing to conduct the appropriate analysis under section1506 based on the record established despite its limitation on discovery and cross-examination and direct.

b.    **Violations of Russian and United States Law**

It is axiomatic that it is contrary to United States public policy to recognize proceedings that are illegal under applicable foreign law and would offend fundamental policies of the United States. *See In re Toft,* 453 B.R. 186, 189 (Bankr.S.D.N.Y.2011); *In re Ephedra Prods. Liability Litig.*, 349 B.R. 333 (S.D.N.Y.2006); *In re Gold & Honey, Ltd.*, 410 B.R. 357 (Bankr.E.D.N.Y.2009 *In Re Vitro,* 701 F.3d 1031 (5th Cir. 2012); *In re Qimonda AG Bankr. Litig.*, 433 B.R. 547 (E.D.Va.2010). Specifically, the record establishes:

The Receiver secured the funds deposited in the White & Case trust account through illegal transactions with an unknown third-party connected to the co-conspirators described in detail above. *See supra.* at pp. 20-23. The Gureev contracts violated Art. 313 of the Russian Code. The Receiver did not rebut the testimony of PPF's expert that these agreements are an example of the problem in Russia of abuse of Art. 313 frequently used to manipulate bankruptcy proceedings. Furthermore, based on the wire transfers introduced by the Receiver, the funds were transferred through a personal banking mechanism and the Receiver offered no evidence to corroborate his assertion that the funds came from the Debtor's account. Moreover, even if the Receiver deposited the Gureev Payment in a Debtor's estate account (as required under Russian bankruptcy law), it would be a violation of Russian and United States bankruptcy law for the Receiver to co-mingle the funds in a personal account or to use a personal mechanism to

transfer the funds to the White & Case trust account and would be sanctioned by the Russian bankruptcy court. Zhukov, 5/1Tr. at pp. 58:24-25; 28 U.S.C. § 586; *see also* Handbook for Chapter 7 Trustees issued by the U.S. Department of Justice, Executive Office for United States Trustees, Sec. D at pp. 5-3. In *In re Gold & Honey, Ltd.,* 410 B.R. 357, 371 (Bankr. E.D.N.Y. 2009), the public policy exception arose in connection with a Chapter 15 petition for recognition brought by receivers who were appointed in Israel after the commencement of a U.S. Chapter 11 case involving the same debtor. The creditor who commenced the receivership in Israel had appeared in the U.S. case and continued to prosecute its application in Israel despite a finding by the U.S. court that the automatic stay of section 362 of the Bankruptcy Code prohibited such action without an order granting relief from the stay. *Id.* at 364. The U.S. court refused to recognize the foreign proceeding on several grounds, including the public policy exception of section 1506 of the Bankruptcy Code, holding that recognition of the Israeli proceeding would amount to a reward for an end-run around the automatic stay.

Further, the Receiver also violated Russian laws requiring him to prepare periodic reports listing the assets revealed and aggregated; to seek Russian bankruptcy court approval prior to engaging and/or paying third parties such as White & Case; to open a bank account of the Debtor for the purpose of the administration of bankruptcy; to exercise the prerequisite due diligence with regard to Gureev Agreements; and to act in good faith with regard to providing service and enter into an agreement for service at the expense of the bankruptcy estate by not seeking or receiving Russian bankruptcy court approval prior to engaging the White & Case firm or transferring funds into the White &

Case trust account. [Doc. 51; Zhukov 5/1 Tr. at pp. 61-62; 78:21-79:25; Doc. 49; Bazarnov, 4/12 Tr. at pp. 63-64; 91-92].

The Bankruptcy Court erred in failing to acknowledge the Receiver violated both United States and Russian law and granting recognition under Chapter 15.

### c. Fundamental U.S. Policy Sanctioning Russian Human Rights Abuses and Corruption

The Bankruptcy Court disregarded United States public policy established sanctions for certain Russian internal violations of legal norms to the extent a party comes within United States jurisdiction under the Global Magnitsky Human Rights Accountability Act (Subtitle F. Public Law 114-328) ("Magnitsky Act"). For example, individuals determined to engage in such conduct are banned from entering the United States and assets they have here are subject to forfeiture, Congress enacted the Magnitsky Act in 2012. The current United States President punctuated his Administration's commitment to this policy as recently as April 20, 2017, when the Administration issued a report on U.S. Law enforcement efforts under the Magnitsky Act. In a cover letter, the President stated "over the coming weeks and months, agencies will undertake thorough interagency vetting to ensure we fulfill our commitment to hold perpetrators of human rights abuses and corruption accountable.[15]" The very Russian official -- Head of the Investigative Committee of the Russian Federation (Russian FBI), Alexander Ivanovich Bastrykin -- contacted by the Receiver (Nogotkov) in the P-Granit Invest related bankruptcy regarding re-opening criminal charges against the Debtor was specifically designated as subject to U.S. sanctions. Despite these glaring irregularities, the Bankruptcy Court refused to re-open the record to include the letter from Nogotkov to

---

[15] Available at https://www.whitehouse.gov/the-press-office/2017/04/20/letter-president-certain-congressional-committee-chairs, last checked on November 16, 2017.

Bastrykin wherein Nogotkov invoked the SDNY Litigation as a reason to criminally prosecute the Debtor in Russia.[16]

## VIII.  CONCLUSION

For the reasons set forth above, it is respectfully requested that the Orders and Decisions of the Bankruptcy Court appealed from be reversed.

Dated: November 16, 2017

<div style="margin-left: 40%;">

GREENBERG TRAURIG, LLP

By:  _/s/ Caroline J. Heller_____
Caroline J. Heller
Alan J. Brody
MetLife Building
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: _hellerc@gtlaw.com_
     _brodya@gtlaw.com_

-and-

Sanford M. Saunders, Jr.
Nicoleta Timofti
2101 L. Street, N.W.
Suite 1000
Washington, D.C. 20037
Telephone:  (202) 331-3100
Facsimile:  (202) 331-3101
Email: _saunderss@gtlaw.com_
     _timoftin@gtlaw.com_

</div>

---

I.[16] While the Bankruptcy Court was disregarding the Magnitsky Act, the United States Government was litigating the first civil forfeiture case brought under its penalty provisions: _U.S. v. Prevezon Holdings Ltd. et al_, 13-cv-06326 (TPG) (S.D.N.Y.).  The Prevezon case arose out of the corporate raid of Hermitage Capital and the death of its lawyer Sergi Magnitsky.